UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| COLT LINDSEY, insured / assignor, and MED-X GLOBAL AIR AMBULANCE, LLC, provider and assignee,<br><br>*Plaintiffs*,<br><br>vs.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>*Defendant*. | CIVIL ACTION NO: 5:18-cv-438<br><br>**COMPLAINT and JURY DEMAND** |

Plaintiffs, COLT LINDSEY, insured / assignor ("Lindsey"), and MED-X GLOBAL AIR AMBULANCE, LLC, provider / assignee ("Med-X"), by and through undersigned counsel, sue Defendant, UNITEDHEALTHCARE INSURANCE COMPANY ("UHIC"), as follows:

**NATURE OF THE ACTION, PARTIES,
JURISDICTION, AND VENUE**

1. This is an action arising out of UHIC's breach of health insurance contract, namely UHIC's decision to deny / underpay covered claims relating to air ambulance services provided by Med-X to Lindsey.

2. At all material times, Lindsey was insured as a dependent under his mother's health insurance policy and was a citizen and resident of Comal County, Texas. Lindsey is in all respects *sui juris*.

3. At all material times, Med-X was an air ambulance provider and / or broker incorporated in the State of New Jersey and with its principal place of business in Morganville, New Jersey, Monmouth County. Med-X is in all respects *sui juris*.

4. Upon information and belief, UHIC was at all material times an insurance company with its principal place of business / headquarters and / or incorporation in the State of Connecticut and engaged in the business of selling and / or administering health insurance and / or deciding and / or paying health insurance claims in the State of Texas.

5. This Court has original jurisdiction over this matter pursuant to Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of any fees, costs, interest, or the like.[1]

6. Venue is proper in the Western District Court of Texas pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) UHIC carries out their business(es) in the State of Texas, including within this District, (b) facts and circumstances (*e.g.*, claim denial correspondence) giving rise to this cause of action transpired (at least in part) in this District, (c) the subject insurance policy was delivered in this District, (d) Lindsey resides in this District, and (e) Med-X does business in the State of Texas, including within this District.

7. All conditions precedent to the institution of this action have occurred, been performed, been waived, were not mandatory, and / or were futile. Futility is especially at play here, as UHIC refused repeated pre-suit requests for the administrative record such that

---

[1] Given a government (school) health insurance plan is at issue, this matter is exempt from ERISA and accordingly not subject to Title 29, United States Code, Section 1332(e) and Title 28, United States Code, Section 1331.

Lindsey and / or Med-X could possibly pursue pre-suit appeals / reviews aimed at remedying the situation sans litigation.

## COMMON ALLEGATIONS

8.     At all material times, Lindsey was covered as a dependent under a Comal Independent School District ("CISD") health insurance policy offered, underwritten, and serviced by UHIC, bearing Group No. 904905 (the "Policy").  A copy of the Policy in effect at all material times is attached as **Exhibit A**.

9.     Upon information and belief, the Policy is a fully-funded health insurance program offered by the CISD to its employees.  At all material times, premium payments for the Policy were current.

10.    The Policy is a contract between UHIC and Lindsey whereby UHIC, in exchange for premium payments, agreed to provide coverage for medical services, including medical services such as those provided by Med-X, which the Policy refers to as a "Covered Health Service."

11.    "Covered Health Service" is defined, in pertinent part, as follows:

**Covered Health Service(s)** - those health services, including services, supplies, or Pharmaceutical Products, which we determine to be all of the following:
- Medically Necessary.
- Described as a Covered Health Service in this *Certificate* under *Section 1: Covered HealthServices* and in the *Schedule of Benefits*.
- Not otherwise excluded in this *Certificate* under *Section 2: Exclusions and Limitations*.

Ex. A at 72 (emphasis in original).

12.    One such "Covered Health Service" is emergency ambulance, as follows: "[e]mergency ambulance transportation by a licensed ambulance service (either ground or

3

air ambulance) to the nearest Hospital where Emergency Health Services can be performed."

*Id.* at 9.

      13.     The Policy defines "emergency," as follows:

> **Emergency** - health care services provided in a Hospital, emergency facility, Freestanding Emergency Medical Care Facility, or comparable emergency facility to evaluate and stabilize a medical condition of recent onset or severity, including severe pain, that would lead a prudent layperson possessing an average knowledge of medicine and health to believe that the person's condition, sickness, or injury is of such a nature that failure to get immediate medical care could result in:
> - Placing the person's health in serious jeopardy.
> - Serious impairment of bodily functions.
> - Serious dysfunction of a bodily organ or part.
> - Serious disfigurement.
> - In the case of a pregnant woman, serious jeopardy to the health of the fetus.

*Id.* at 74 (emphasis in original).

      14.     On or about June 10, 2016, Lindsey suffered life-threatening injuries as a result of a fall from a four-story balcony in Cabo San Lucas, Mexico.

      15.     Lindsey sustained severe head trauma and was unconscious for thirty minutes. He was transported by ambulance to Hospital De Especialidades where Doctor Alejandro Grimaldo treated him. During Dr. Grimaldo's assessment he noted that Lindsey was "hyperactive, anxious, disoriented, confused, combative and aggressive. He has a right upper extremity deformity and exposed fracture." A closed reduction of the elbow dislocation as well as immobilization of the exposed fracture is performed. Due to the traumatic brain injury and the injury to the arm, Dr. Grimaldo "decided to transfer via air ambulance for the resolution and treatment of the patient in [his] place of origin, since he requires the utmost attention and care."

16. On or about June 10, 2016, Med-X was enlisted for their air ambulance service due, for examples, to the open wound and risk of blood clotting. Lindsey was transported from Cabo San Lucas, Mexico to University Hospital in San Antonio, Texas. Flight paramedics administered antibiotics to prevent sepsis and administered pain medication to control the pain. During the flight, Lindsey was also given oxygen. Upon arrival at University Hospital Emergency Room, Lindsey was transported from a stretcher to a hospital bed.

17. Lindsey's treating physician at University Hospital confirmed that he had suffered life- and limb-threatening injuries that required a higher level of care than he was able to get in Mexico. Lindsey had open fractures and was on intravenous antibiotics which precluded flight on a commercial aircraft. In addition to his extremity injuries, Lindsey had suffered severe injuries to his cranium, cervical spine, and chest. With these injuries, flying commercial aircraft or going overland would have been quite dangerous, as, for example, the likelihood of a pulmonary emboli (the sudden blockage of an artery in the lung, usually by a blood clot) would have been greatly increased. Moreover, as another example, Lindsey was on a stretcher and needed to be reclined in order to keep his limbs elevated and for the antibiotic infusion to function satisfactorily.

18. In the opinions of treating medical professionals in both Mexico and the United States, any course of action except transport by air ambulance would have been dangerous for Lindsey.

19. The total amount of the medical expenses incurred for the services of Med-X was $198,672.00.

20. Med-X billed UHIC for the medical expenses under the terms of the Policy.

21. UHIC denied all but $66,960.25 of the medical expenses incurred.

22. To date, UHIC has unreasonably withheld from Med-X benefits totaling $131,711.75 for medical services provided to Lindsey.

23. On or about June 22, 2017, Med-X wrote to UHIC asking for a copy of the entire administrative record.

24. On or about June 23, 2017, UHIC sent a letter to Med-X erroneously noting Lindsey's supposed invocation of appeal. Lindsey had not invoked appeal, as UHIC had not yet sent the administrative record.

25. On or about July 11, 2017, Med-X sent UHIC a letter stating that no pre-suit appeal could occur without the administrative record that was previously requested. In other words, putting forth an appeal package in the blind would have been the epitome of futility.

26. On or about July 11, 2017, UHIC sent a letter requesting a written authorization.

27. On or about July 24, 2017, Med-X sent the required information and again requested the administrative record.

28. On or about July 27, 2017, UHIC sent a letter to Lindsey and Med-X stating that the claim has been "reprocessed prior to our review of your appeal" and an EOB should be received in fourteen days. Again, this despite no appeal having been invoked in the blind.

29. On or about August 11, 2017, Med-X again wrote a letter to UHIC *again* stating that no appeal had been invoked and *again* requesting the administrative record.

30. To date the administrative record has not been received.

31. Lindsey's insurance benefits were assigned to Med-X in order to compensate Med-X for the valuable (and life-saving, really) air ambulance services afforded by Med-X.

And this is perfectly acceptable under the Policy, which provides, in pertinent part, as follows: "If a[n] [insured] provides written authorization to pay Benefits to the … health care provider and provides it to us with a claim for benefits, all or a portion of any Eligible Expenses due to a provider may be paid directly to the provider instead of being paid to the [insured]." Ex. A at 51.  In this vein, the Policy also provides that "[b]enefits will be paid to [the insured] … unless either of the following is true:  The provider notifies us that [the insured's] signature is on file, assigning benefits directly to that provider." *Id.* at 52.

32.  Upon information and belief, UHIC is inherently conflicted – UHIC is responsible for making claim decisions and also for making claim payments (or not, as in this case where UHIC has lowballed Lindsey / Med-X).  UHIC has a financial incentive to augment corporate profit by denying / underpaying insurance benefits due and owing to an insured (or provider *via* assignment) under the Policy.

33.  As a result of UHIC's misconduct, breach of both its duties and its contractual obligations, and violations of law, Lindsey / Med-X has suffered damages that include the remaining amount of the subject air ambulance fee that UHIC improperly refuses to pay.

34.  UHIC alleges that it denied Lindsey's claim because air ambulance transportation was not medically necessary.  This defies both commonsense and the opinions of all medical professionals involved in Lindsey's care.  UHIC's denial of a legitimate and medically necessary air ambulance claim (likely related to its inherent conflict of interest) constitutes breach of contract and violation of law.

## COUNT I – BREACH OF CONTRACT

35.  Lindsey and Med-X re-allege Paragraphs 1 through 34 as if fully set forth herein.

7

36. At all material times and in exchange for valuable premium, Lindsey was covered as a dependent by a CISD health insurance Policy offered, underwritten, and serviced by UHIC, which is a binding and enforceable insurance contract.

37. Lindsey's complex (to put it mildly) and severe (to put it mildly) medical conditions and needed services / treatments (including air ambulance transport) were covered under the Policy, and UHIC erred in not fully indemnifying Med-X (as assignee of Lindsey's health insurance benefits for the air ambulance service at issue) in relation to same.

38. Pursuant to the Policy, the law, and / or equity, UHIC, among other things, had a duty to properly investigate the subject medical condition and needed services / treatments, adjust / investigate the subject claims, and fully indemnify Lindsey's provider (Med-X).

39. UHIC failed Lindsey and Med-X in these regards (most notably with respect to its failure to pay the benefits due and owing under the Policy, but also with respect to ignoring repeated pre-suit requests for the administrative record and stymieing any Lindsey / Med-X ability to resolve this dispute without litigation), which contravened the Policy, the law, and / or equity.

40. As a direct, foreseeable, and proximate result of UHIC's breaches of its obligations under the Policy, the law, and / or equity, Lindsey and Med-X have suffered and continue to suffer damages.

41. Lindsey and Med-X have no other adequate remedy at law to address the injuries suffered by them as a result of UHIC's wrongdoing.

42. As a result of UHIC's wrongdoing, undersigned counsel was retained for representation in this action and is entitled to a reasonable fee for services rendered.

43.     WHEREFORE, Plaintiffs, Colt Lindsey and Med-X Global Air Ambulance, LLC, respectfully request the entry of judgment against Defendant, UnitedHealthcare Insurance Company, for liability and for damages including, but not necessarily limited to, past-due contractual monies ($131,711.75), for all awardable attorneys' fees, costs, all awardable pre- and post- judgment interest, and for such other relief as this Court deems equitable, just and proper.[2]

## JURY DEMAND

44.     Plaintiffs, Colt Lindsey and Med-X Global Air Ambulance, LLC, demand a trial by jury on all issues so triable as a matter of right.

Dated this 9th day of May, 2018.

    Respectfully submitted,

    **MERLIN LAW GROUP, P.A.**

    /s/ Jeff G. Zane
    Jeff G. Zane, Esq.
    Texas Bar No: 24095197
    515 Post Oak Blvd., Suite 750
    Houston, Texas 77027
    (713) 626-8880; (713) 626-8881 (f)
    jzane@merlinlawgroup.com

    *and*

    Jeffrey L. Greyber, Esq.
    Texas Bar No. 24103030
    222 Lakeview Ave., Suite 1250
    West Palm Beach, Florida  33401
    (561) 855-2120; (561) 249-1283 (f)
    jgreyber@merlinlawgroup.com
    hcasebolt@merlinlawgroup.com
    *Attorneys for Plaintiffs*

---

[2] Lindsey and Med-X reserve the right to amend this Complaint (as a matter of right or pursuant to leave of Court) should additional liabilities (*e.g.*, bad faith) and damages (*e.g.*, consequential or punitive) manifest as litigation / discovery progresses.